Gus Billinglea, plaintiff in error, *vs*. The State of Georgia, defendant in error.

(Bleckley, Judge, was providentially prevented from presiding in this case.)

When stolen meat was found at defendant's house, and he told repeated and contradictory lies about it, and when tracks the size of defendant's were found at the smoke-house, with two smaller tracks answering to the defendant's sons, and when the tracks found had a peculiar mark, and defendant's boots had the same mark, and the defendant lived within a mile and a half of the smoke-house which was broken open, and from which the meat was stolen, and the same track was traced within three hundred yards of the defendant's house, and lost there in broomsedge in the direction of his house, and some of the stolen meat was also found at the house of defendant's son-in-law, and the meat was clearly identified as that stolen, and the discovery was made in the morning, and the smoke-house was in the owner's yard, within the curtilage of his house, and the law was fairly given in charge to the jury and no complaint made about it at all :

*Held*, that the evidence is sufficient to authorize a conviction of burglary in the night, although other circumstances pointed to another as connected with the burglary, especially when other tracks were found about the garden gate, and three poles for prizing were found where the logs had been prized up, and the proof was that one man by himself could not have broken and entered by such prizing.

Criminal law. Burglary. Circumstantial evidence. Before Judge WRIGHT. Baker Superior Court. May Term, 1876.

Reported in the opinion.

I. A. BUSH, by JACKSON & LUMPKIN, for plaintiff in error.

B. B. BOWER, solicitor general, for the state.

JACKSON, Judge.

The defendant was indicted and found guilty of burglary at night. He moved for a new trial on the ground that the verdict was contrary to the law and the evidence. The court overruled the motion, and the single question is, shall this court control the discretion of the presiding judge in not granting the new trial?

The facts are that a smoke-house, in the yard and within the curtilage of the dwelling house, built of logs, was broken into by prizing out two of the logs so as to make a hole large enough to enter and steal the meat. Five hams and five middlings, worth $2 50 a piece, and three shoulders, worth $1 75 a piece, were stolen. There were three poles by which the logs seemed to have been prized up, and three sets of tracks near the smoke-house; one was a large track, eleven to twelve inches long, and the others were smaller, seven or eight inches long; there was also a track at the garden gate, about which some one, from the tracks made, seemed to have been standing. One of the tracks at the smoke-house had a peculiar mark, and was traced to within three hundred yards of defendant's house and was then lost in straw-sedge. This was the large track, and the size and peculiar mark corresponded with defendant's boots. The smoke-house was discovered in the morning. On going to defendant's house to search, two hams were found, identified to be part of those taken from the smoke-house. Defendant said they were his;

that they were the hams of a large hog that he had himself fattened and killed; that the reason he had not hung them up was, that he had put them aside for summer; he was asked if his hog was deformed, as one ham was larger than the other, and both taken from the left side of the hog. He answered only by raising his face to heaven and claiming the hams. He told various other inconsistent stories about the meat, and finally endeavored to palm off the burglary upon one Cochran, who, he said, gave him the two hams for letting him stay with him awhile. During his conversation about the hams, his wife asked him why he did not tell the whole truth, and he replied that he could tell his own tale. Defendant lived a mile and a half or two miles from the smoke-house, and had two sons not fully grown living with him. Some more of the meat, thoroughly identified, was found at the house of defendant's son-in-law. It was also in evidence that one man could not have prized up the logs and broken into the smoke-house.

This court has held that the possession of stolen goods unaccounted for, while sufficient to convict a defendant of larceny from the house, is not sufficient of itself to convict of burglary. But in this case some of the meat was found at defendant's, some at his son-in-law's; the large track at the smoke-house with its peculiar mark, called a crean, at the heel, corresponded with defendant's foot, while the two smaller tracks might well fit the feet of his two boys; and the larger track, notwithstanding the rain and softness of the ground, was traced to within three hundred yards of defendant's house, and could not be traced further, though going directly towards his house, on account of the field of straw. These facts taken in connection with his lies, in our judgment, authorize the verdict.

The effort to put the burglary upon Cochran is from defendant's own lips, and unsupported by tracks, or size of Cochran's foot, or anything else, except that he, Cochran, had been seen in the neighborhood. Besides, Cochran might have been present on the watch at the garden gate, or otherwise aiding and abetting the burglary; but this does not show that

defendant was not also present, and engaged in it. The offense was evidently committed at night; nobody would have attempted it on a smoke-house, so near the dwelling and with the family in it, in the day time; nor could it have been done in the day without the knowledge of the family. Besides, the evidence tends to show that it was discovered on the following day, in the forenoon. The jury passed upon the case, the presiding judge was satisfied with their verdict, and we will not control his discretion in overruling the motion for a new trial.

Judgment affirmed.